Gaston, Judge.
 

 We have deliberately considered of all the objections presented on this record to. the regularity of the conviction of the prisoner.
 

 The indictment contains two counts. The first charges
 
 “
 
 that John C. Hardin, John Haney and John W. Williams, on the 1st of January, 1837, with force and arms, in the county of Rutherford, one negro man slave, by the name of Eli, then and there being the property of Nancy Davis, of the value of fifty dollars, feloniously did steal, take and carry away, contrary to the form of the statute in that case made and provided, and against the peace and dignity of the stateand the second charges, “ that the said John C. Hardin, John Haney and John W. Williams, on the day and year aforesaid, with force and arms, in the county aforesaid, one other man slave, named Eli, then and there being the property of- Nancy Davis, and then and there in the possession of her, the said Nancy, feloni-ously by violence, seduction and other means, him the said man Eli, slave as aforesaid, against the will and consent of her, the said Nancy,Davis, owner as aforesaid, did take and convey away from the possession of her, the said owner, with an intention the said slave to sell, dispose of and convert to their own use, contrary to the form of the statute in that case made and provided, and against the peace and dignity of the state.” The said John C. Hardin, John Haney and John W. Williams having been arraigned, pleaded not guilty; and, by consent of the counsel for the state and of the prisoner,
 
 he
 
 was put upon his trial, separate and alone from the other two persons accused. The prisoner thereupon, by his counsel, prayed the Court that the solicitor for the state should elect upon which of the two counts he Would try the prisoner; which prayer
 
 *394
 
 was over-ruied by the Court. The prisoner was then tried and found “guilty of the felony and seduction in manner and form as charged in the second count of the bill of indictment, and not guilty in manner and form as charged in the first count of said bill.”
 

 It is no objection on a demurrer, and is certainly, therefore, not good in arrest of judgment, that several felonies are charged against a prisoner in the same indictment, for on the face of an indictment, every distinct count
 
 imports
 
 to be for a different offence. It is, however, in the discretion of the Court, to quash an indictment, or compel the prosecutor to elect on which count he will proceed, when the counts charge offences
 
 actually
 
 distinct and separate. They exercise this discretion, lest the prisoner should be confounded in his defence, or be prejudiced in his challenges tothe jury ; for he might object to a juryman trying one of the offences, when he would have no objection to his trying the other. But in, this case, there was no pretext for asking this indulgence of the Court, as the indictment accused the prisoner but of one-criminal act, charged under different modifications, so as to correspond with the precise proofs that might be adduced. The prisoner could not pretend, that these modifications of the charge increased the difficulty of making a fair defence; or prejudiced him in his challenges.
 

 The evidence offered on the trial, if believed, established a case of a concerted scheme between the prisoner and Hardin, to seduce the negro slave Eli from the possession of his mistress, and carry him to the state of South Carolina, to be sold, for their benefit, and that of their associates. The principal witness for the state, an accomplice in the crime, testified to the seduction and procuring of the negro by the prisoner, and to the arrangements made between the prisoner, Hardin, and himself, for the conveying away of the negro; and was proceeding to testify as to the manner in which' the negro was conveyed away and sold, in which part of the transaction the witness was the principal agent, when he was asked by the prisoner’s counsel, whether he had seen the prisoner, after the making of these arrangements, and answered, that he had not, until after
 
 *395
 
 his return from South Carolina. The prisoner’s counsel then objected to any evidence being given against the prisoner, of what'was done by the witness in the interme-díate time. This objection was overruled ; and the witness proceeded to state circumstantially his journeying on with the negro; his attempt to sell him to one person; his subsequent sale of him in South Carolina; his return to this state; and his here meeting with the prisoner and Hardin, and dividing with them, the proceeds of the sale. We are of opinion, that there was no error in receiving the testimony objected to. That one man should not be criminally affected by the acts or declarations of a,stranger, is a rule founded in common sense, and resting on the principles of natural justice; and therefore a mere gratuitous assertion by any
 
 one,
 
 inculpating himself and others as fellow conspirators, should never be received as evidence against any person but himself. But where a privity and community of design has been established, the act of any one of those who have combined together for the same illegal purpose, done in furtherance of the unlawful design, is, in the consideration of law, the act of all. 2 Stark. Ev. 233, 234, 235. The cases in which this doctrine is most frequently applied, are those of treason and conspiracy, where it is perfectly settled, that after proof of the
 
 association
 
 for a traitorous or illegal purpose, the declarations, acts and conduct of all the associates, in furtherance of their common purpose, is evidence against each and every of them. But it is not confined to indictments for treason and conspiracy. It is immaterial what is the nature of the indictment, provided the offence involve a conspiracy. Thus, upon an indictment for murder, if it appear that others, together with the prisoner, conspired to perpetrate the crime, the act of one, done in pursuance of that intention, is evidence against the others. See
 
 State
 
 v.
 
 Poll and Lavinia,
 
 1 Hawks, 442. The only plausible objection to the testimony received, is, that it was unnecessary; for that the crime charged against the prisoner consisted in the
 
 taking
 
 of the slave, with a felonious
 
 intent,
 
 and
 
 that
 
 crime could not be varied by any acts done by another, though with the concurrence of the prisoner, subsequently
 
 *396
 
 to the taking. But it is plausible only. If the objection were well founded, it would apply to evidence of his own acts, subsequent to the original taking; for they can- . 7 , • . , i ■ t> not impress a
 
 new character
 
 upon the original taking. ±5ut such acts, whether done by himself, or by his agent, are. material and relevant, as tending to manifest the character and design of the original act. They are the accompanying, surrounding, and consequent circumstances of a transaction, the more of which is known, the more thoroughly the transaction itself is understood; and they furnish the means, by their concurrence with, or opposition to, other matters given in evidence, of testing the veracity and accuracy of the witnesses by whom they are testified.
 

 Two exceptions have been taken to the charge of the judge. 1st, For that the Court refused an instruction which was prayed for, that the jury ought not to find the prisoner guilty upon the evidence of an accomplice, unless that evidence was corroborated as to the agency of the prisoner in the transaction; and 2dly, For that the Court recited the testimony on the part of the state, without reciting any of the testimony on the part of the prisoner.
 

 In relation to the matter of the first exception, it appears that his Honor instructed the jury, that an accomplice was a competent witness, but it was unsafe to find, and a jury ought not to find, a verdict of guilty, upon the evidence of an accomplice, unless that evidence was supported in some of its material parts by other evidence, so as to carry
 
 to
 
 the minds of the jury a full and entire conviction of its truth; and being specially called upon to instruct the jury that the evidepce of an accomplice, although supported in material parts of the general narrative, must also be supported in material parts as to the personal agency of the prisoner,' declined to give the instruction as prayed ; and charged the jury, that the law did not make such a confirmation indispensable, although it would be more satisfactory ; and that if the evidence of an accomplice, from the manner in which it was given, and from the support which his general narrative received from other testimony,
 
 *397
 
 carried to the minds of the jury full and entire'conviction of its truth, it was sufficient to authorize a verdict against the prisoner, although the narration was not supported by other evidence, in that part of it in which tlie prisoner is stated to have had a personal agency.
 

 This Court understands the rule of law to be, that the unsupported testimony of an accomplice, if it produce undoubting belief of the prisoner’s guilt, is sufficient to warrant a verdict affirming his guilt. Such is certainly the law of the country from which we have derived the principles of our jurisprudence. It is so laid down by Hale, 1 Pleas of the Crown, 305, although he adds, that it would be
 
 hard
 
 to take away the life of a man upon it, The doctrine is explicitly stated in Hawkins, B. 2, ch. 46, sec. 92, with the remark, however, that
 
 “
 
 it seems to be the general opinion, that unless some fair and unpolluted evidence corroborate and give verisimilitude to the testimony of an accomplice, a person convicted under such circumstances, ought to be recommended to mercy.” The very point was solemnly adjudged by the twelve judges of England, in
 
 Atwood and Robins’s Case,
 
 1 Leach’s Cro. Ca. 464, who held unanimously, that an accomplice is a competent witness; and if the jury, weighing his testimony, think him worthy of belief, a conviction, supported by such testimony alone, is perfectly legal. The same was afterwards held in
 
 Durham and Crowder’s Case,
 
 1 Leach’s Cro. Ca. 478; and in the case of
 
 Rex
 
 v.
 
 Jones, 2
 
 Camp. 132, Lord Ellenborotjgh observed, that “no one can seriously doubt, that a conviction is legal, though it proceeds upon the evidence of an accomplice only. Judges, in their discretion, will advise a jury not to believe an accomplice, unless he is confirmed, or only so far as he is confirmed; but if he is believed, his testimony is unquestionably sufficient to establish the facts he deposes. It is allowed, that he is a competent witness; and the consequence is inevitable, that if credit be given to his testimony, it requires no confirmation from another witness.” We are not aware of any judicial decision in our country, at variance with the rule brought hither by our ancestors. It is impliedly recognized in
 
 The State
 
 v.
 
 *398
 

 Twitty, 2
 
 Hawks, 449, where the. Chief Justice, delivering the opinion of the Court, that a witness might be called to support the credit of an accomplice, before the latter had been a(_tacked, because he was necessarily exposed to suspicion, by reason of his being an acknowledged accomplice, observes,
 
 “
 
 though an accomplice is a competent witness, yet his unconfirmed evidence is
 
 usually received with caution,
 
 and distrusted by a jury;” and in the
 
 State
 
 v.
 
 Weir,
 
 1 Dev. Rep. 363, the rule is referred to by the Court, as being now perfectly settled: “ It is now settled, that his evidence,” (the evidence of an accomplice) “ may be left to the jury, who, if they believe him, may convict the prisoner.”
 

 If this be the settled rule, it follows, necessarily, that the exception taken cannot be sustained ; for no one can
 
 require
 
 of the judge to give an instruction to the jury, except on the
 
 law
 
 of the case. The judge may caution them against reposing hasty confidence in the testimony iof an accomplice. It is usual — justifiable—and, we add, it is
 
 proper
 
 to do so, where he has cause to apprehend that the jury may feel themselves bound to find a verdict conforming to the positive testimony of the witness, without weighing the circumstances <?f suspicion and distrust under which his testimony is rendered. Long usage, sanctioned by deliberate judicial approbation, has given to this ordinary caution a precision which makes it approach to a rule of law. Jurors are advised, that it is deemed hard, and that it is unsafe to convict on the testimony of an accomplice, unless that testimony receive material support from evidence derived
 
 aliunde,
 
 coinciding with it in
 
 considerable
 
 circumstances, as to leave no rational doubt in their minds of its truth. In what parts of the details of the testimony this confirmation should be had, in order to remove the jealousy and suspicion to which the testimony is exposed, and to create such a degree of confidence in the general credibility of the witness, as to command faith in those parts of his narrative where he is not thus supported, the judge has not the right to direct or adv ise the jury. Speculative writers have indeed u ndertaken with much ingenuity to devise rules of faith on thesubject,
 
 *399
 
 but the lawis wholly silent concerning them. Toleratingand approving of the general caution, it trusts the application of the caution, under all the circumstances testified, wholly to the intelligence and integrity of the jury.
 

 The cases
 
 of The State
 
 v.
 
 *400
 

 Hall,
 
 2 Hay. 105, and
 
 The State
 
 v.
 
 Jernagan,
 
 3 Murph. 12, approved.
 

 
 *399
 
 With respect to the matter of the second exception, it appears from the judge’s charge, which is spread upon the record, that his Honor did not undertake to recapitulate the evidence to the jury, but only to direct their attention to the important questions which they were called upon to investigate; and to explain to them the law applicable to the case. It is not stated that he was called on, either by the state or the prisoner’s counsel, to give a more' full charge; nor is it seen, that the purposes of justice required it. The great matter in controversy was the degree of credit due to the testimony of Robins; and to us it appears, that with great propriety he called the attention of the jury to the matters in which it was alleged that this testimony was corroborated by that of others — laid down the rule of law thereon benignantly for the prisoner — and fairly left the whole case to the jury, with an injunction to give to every circumstance of it a careful consideration, without any departure from impartiality in collating the evidence, or any intimation of his opinion thereon. See
 
 State
 
 v.
 
 Lipsey,
 
 3 Dev. Rep. 485. This objection to the charge seems to us, therefore, also unfounded.
 

 Several objections were urged below in arrest of judgment, because of insufficiency, uncertainty, and repug-nancy in the count whereon the prisoner was convicted; and others have presented themselves to us, as not undeserving of notice.
 

 In the first place, it is objected, that this count does not bring the offence charged within the words of the statute whereon it is founded. The criminal intention charged in the indictment is, “ with intention the said slave to sell, dispose of, and appropriate to their own use.” The offence described in the statute is to “ steal, or by violence, seduction, or any other means, take or convey away any slave, the property of another, with an intention to sell, or dispose of to another, or appropriate to their own use, such slave.” It was settled, in the case of
 
 The State
 
 v.
 
 Hall,
 
 2 Hay. Rep. 105, and
 
 The
 
 
 *400
 

 State
 
 v. Jernagan, 3 Murph. 12, that the object of the act of 1779,
 
 (Rev. c.
 
 142,) was two-fold; 1st, to punish the crime of
 
 stealing
 
 a slave, with death, by taking away the benefit of clergy, to which the offender was entitled at common law: and secondly, to punish all other means of depriving an owner of his slave, whether by force or fraud, if the taking or conveying away were accompanied with the intention declared in the act, viz. to appropriate to the use of the wrongdoer, or to sell or to dispose of to another— that the words of the statute declaring the intention, do not qualify the crime of stealing, which necessarily means the taking
 
 causa lucri,
 
 but qualify the new felony created by the statute, that of taking or conveying away by seduction, violence, or other means. The criminal intention is declared in the disjunctive — to sell — to dispose of to another — or to appropriate to their own use: and these three purposes seem designed to express all those which characterise a larcenous or felonious intention. To sell, means a disposition of the slave to another, for a price: to dispose of to another, embraces transfers made either gratuitously, or for a price; and to appropriate to their own use, describes the keeping of the slave, to enjoy his services. We hold it, therefore, to be clear, that the felony created by the statute, is sufficiently described, so far as intention is concerned, by charging the act to have been done with intent to
 
 steal
 
 the slave. As sale is one mode of disposition, there is nothing repugnant in charging the intention to have been to sell
 
 and
 
 dispose of the slave. The latter words are unnecessary, indeed, but, at the worst, they are only redundant, and, in our opinion, do not extend the intention imputed beyond that of an intention to
 
 sell.
 
 Had the charge stopped here, it would have conformed to that which was pursued in the third count of the indictment in the case of
 
 Jernagan,
 
 before referred to. It will be seen, that the indictment there contained three counts, the first charging the prisoner with stealing the slave Amos; the second, with taking him by seduction, with intent to appropriate him to his own use; and the third, with [taking him with intent to sell and dispose of him. The counsel for the prisoner took objections to every count
 
 *401
 
 in the indictment; but neither they alleged, nor the Court supposed, that the second was objectionable, in charging merely an intention to appropriate to the use of the prisoner, or the third in charging an intention to sell and dispose of to another. If the words “ to sell, dispose of to another, or appropriate to their own use,” are to be taken
 
 conjunctively,
 
 both these counts were clearly bad. But the count in question does not stop here. It charges an intention to sell, dispose of, “ and
 
 convert
 
 to their own use.” We do not hold the term
 
 convert,
 
 as used in this indictment, to be equivalent to the term
 
 appropriate,
 
 as used in the statute. The latter is employed in the statute, to contradistinguish the use made of the slave, from a sale or disposition of the slave to another, and necessarily means the retaining of him by the wrongdoer. But conversion embraces any unlawful use or disposition made of the slave. A sale is as much a conversion of him, as a detainer from the service of his owner. Following after, and united by the conjunction “ and” to the words “ sell and dispose of,” the conversion here charged, means a conversion
 
 by sale,
 
 and is neither repugnant to the charge of an intention to sell, nor affirmative of any other intention. We hold, therefore, this exception to the count, bad, because we view the
 
 sole
 
 intention charged, to be an intention to sell. Had the count pursued the very words of the statute, “ with intention to sell, dispose of to another,
 
 or
 
 appropriate to their own use,” it would have been bad, because of
 
 uncertainty.
 
 Had it varied from them, by changing “ or” into “ and,” and charged an intention to sell, dispose of to another,
 
 and
 
 appropriate to their own use, we apprehend, that it would have been bad, because of
 
 repugnancy.
 

 It is further objected that the indictment is double, and repugnant, in charging that the prisoner took and conveyed away the slave, “ by seduction, violence, and other means;” and also in charging the intent to be “ to sell, dispose of, and convert to their own use.” The latter part of this objection has been disposed of in considering the first objection; the former part of it remains to be examined. There is no
 
 repugnancy
 
 in the accusation, as
 
 *402
 
 both seduction and violence may have been used in carrying into execution the criminal purpose charged; it may ^ave keen e®®cte(^ ’n Part by one, an<^ Part ^e other means; but it is not so obvious that the indictment is not liable to the objection of duplicity. We are inclined to think that if the objection did exist, it would furnish no sufficient reason for arresting the judgment. “In civil actions, the usual mode of objecting to pleadings for duplicity, is by special demurrer; it is cured by a general demurrer, or by the defendant’s pleading over. In criminal cases, the defendant may object to it by special demurrer, or the Court, in general, upon application, will quash the indictment; but it is doubtful whether he may avail himself of it on general demurrer; it is extremely doubtful if it can be made the subject of a motion in arrest of judgment, or of a writ of error, and it is certainly cured by a verdict of guilty as to one of the offences, and not guilty as to the other.” Archb. Crim. Plead. 55. The verdict in this case does not, in express terms, negative the other means charged to have been employed by the prisoner, but we understand it as affirming only that by seduction. It finds the defendant “ guilty of the felony and
 
 seduction,
 
 in manner and form as charged in the second count of the bill of indictment.” But however this may be, we are of opinion, that the indictment is not vicious as is objected, because of duplicity. A criminal act may be carried on through the agency of several means, and although it would be equally criminal if but one alone had been used, yet when all have been employed, it is nevertheless but one crime, and it may be charged as one crime, with all its attendant circumstances. Thus, the precedents show us, that under the statute whieh punishes as a felony, the demanding of moneys, chattels, or valuable securities “ with menaces or force,” the indictment may set forth the demand to have been made with menaces, or to have been made with force, or to have been made with menaces and force. Archb. Crim. Plead. (5th ed.) 230. So under the statute which makes it felony “ by force or fraud,” to carry away children under ten years of age from their parents, we find precedents of counts
 
 *403
 
 charging the taking by force; others charging the taking by fraud; and others charging the taking by force and fraud. Archb. Crim. Plead. (1st ed.) 257, and same 5th efl. 371. So if an offence be cumulative with respect to the
 
 acts
 
 done, although any one of the acts be sufficient to constitute the crime, the cumulative offence may be charged. Thus under the statute inflicting severe penalties on any persons who shall buy
 
 or
 
 receive certain stolen goods knowing the same -to have been stolen, it is the customary form, to charge that the offender did buy
 
 and
 
 receive such goods. Stubb’s Cro. Cir. Com. 414. Thus, also, the statutes against forgery, describe the offence to be
 
 i!
 
 to forge, or cause to be forged, or wittingly aid and assist in the forging of notes,” &c. An indictment setting forth in the disjunctive, that the defendant did forge or cause to be forged, is unquestionably bad ; while it would certainly be good if it positively charged the offence in either way.
 
 King
 
 v.
 
 Stocker,
 
 5 Mad. Rep. 137. 1 Salk. 342, 371. Yet all the indictments in the Federal Courts of this Circuit, under the act of Congress, on the forging of United . o o • States Bank notes, following the English precedents on a similar act of parliament (see 3 Chitty’s Crim, Law, 1052,) charge cumulatively in one count, that the defendant did falsely make, forge, and .counterfeit, and cause and procure to be falsely made, forged and counterfeited, and wittingly aid and assist in the falsely making, forging and counterfeiting. The entire criminal act done, may have consisted of all these parts, and therefore, it may be set forth as such in one count. It is our opinion, that but a single offence was described in the count whereof the prisoner was convicted: that this offence consisted of parts : that the prisoner could not rightfully object to the accusation as double, because the whole of the offence was set forth ; and is liable to the penalty denounced by the statute, because found guilty of so much thereof as brings his crime within its penal enactments.
 

 crime ¡^commiu ^ by tb| several ° cribed if agency of fbrgery^ may be charged to have been ^ and by pro-^falsely made,
 

 Connected with the objection which has been last considered, is one not so distinctly stated as a reason in arrest, but which we have felt it our duty to examine. The second count charges the taking and conveying a^vay
 
 *404
 
 to have been by seduction, violence,
 
 “
 
 and other means.” It these latter words are to be regarded as constituting a material part of the accusation upon which the prisoner has been convicted; it would follow, we think, that the indictment is too vague, to warrant any judgment thereon. Certainly an indictment upon this branch of the statute would be essentially defective, if it omitted to specify any means by which the taking and conveying away were effected. And if these words constitute a material part of the charge, they would seem to render the accusation almost as general as though it contained no specification of the means. We feel very reluctant to sanction any apparent departure from that certainty in criminal accusations, and that propriety of language generally demanded in^them, the observance of which furnishes one of the best securities against oppression ; but after full consideration, we deem ourselves bound to hold that this indictment does specify seduction and violence as means that were employed, and the allegation of other means not specified, must be considered as surplusage. There is a marked difference between the omission in an indictment, of any fact or circumstance, which is a legal ingredient in the offence, and the addition to an offence already legally set forth, of other matters which do not describe an offence. The defendant’s plea denies only the matters charged ;• no evidence can be received of an ingredient not charged, and no verdict can find it. The omission is, therefore, fatal. But the traverse distinctly puts in issue the offence sufficiently and specifically set forth in the indictment; evidence to support the specific charge is indispensable to a conviction; and the verdict of guilty directly affirms that charge. Therefore is it, that if an indictment be
 
 certain
 
 in some particulars, and
 
 uncertain
 
 as to others, it is void only as to those which are uncertainly expressed, and good as to the residue, Hawkins, Book, 2, ch. 25, sec, 74. And nothing which may be rejected as sur-plusage and
 
 immaterial
 
 shall hurt the indictment. Same, sec. 79. • If one were convicted upon an indictment for that with force and arms, he had done many grievous wrongs to a certain A. B., no judgment could be ren
 
 *405
 
 dered thereon; but it is every day’s experience, that judgment may be rendered on a conviction for an assault and battery on A. B., although the indictment also avers that he then and there did many other grievous wrongs to the said A. B. An indictment for stealing divers goods and chattels (one of the instances put by Hawkins,) would be unquestionably bad; but had it charged the stealing of a specific chattel and of divers others, a conviction would establish the precise theft imputed, and warrant the sentence of the law thereon.
 

 It is lastly objected, as a reason in arrest of judgment, that the value of the negro is not set forth in the second count. We are of opinion that it is not necessary in
 
 that
 
 Count, that the value should be stated. Larceny, at common law, is either grand or petit larceny, according to the value of the thing stolen; and in indictments for larceny, the value is always averred so as to enable the Court to ascertain the character and grade of the offence, both in the management of the trial, and in the rendering of sentence after conviction. Whether an indictment at common law for larceny, would be absolutely bad, when the value of the article stolen is not stated in it, or might be sufficient to justify a judgment for petit larceny, may not be a question altogether free from doubt. It would be a hazardous experiment to omit it. In the first count of this indictment, which we have seen is for grand larceny, known as such before the statute, and upon which the statute had no other operation than to take away its clergiable privilege, the value is very properly set forth; and an omission of it would, we apprehend, have been a fatal defect. But the second count is not for a larceny, and could not be supported as a charge of larceny, from the want of the indispensable term,
 
 steal.
 
 1 Hale, 504. It is for a felony created by the statute ; and the statute makes it a felony to take or convey away negroes, the property of others, with any of the intents which it describes, without regard to the value of the negroes, and whether they be or be not of any value.
 

 There is another objection to the indictment, not indeed, of a weighty character, except that the precise forms of
 
 *406
 
 criminal accusations are
 
 always
 
 important, but which we notice lest it might be supposed to have been overlooked, The entire phrase “ him, the said man, Eli, slave as aforesaid,” in the second count, is unnecessary and ungrammatical, ft is unnecessary, for the
 
 residue
 
 of
 
 the
 
 count explicitly charges that John C. Hardin, John Haney, and John W. Williams, a certain man slave named Eli, the property of Nancy Davis, feloneously, by seduction, violence, and other means, did take and convey. away. It is ungrammatical for the action of the verbs
 
 “
 
 take and convey away,” having been spent on the object “ one other man slave named, Eli, the property of Nancy Davis“ him the said man Eli, slave as aforesaid” is brought in as an object without any verb, by which it is governed. But it cannot avail to arrest the juc*gmenb for not only may it be rejected as wholly superfluous and unnecessary, but because violations of grammar> do not furnish a sufficient objection to the rendition of judgment, if, from the whole tenor of the charge, the statement be sufficiently clear to furnish an intelligible description of the offence, and of the manner of ... committing It.
 

 Anunne. averment, which ren-indictment ungramma-nottitlate it, although it should be carefully avoided.
 

 Upon full consideration of ail that* has been objected, or which we could ourselves suggest in behalf of the unfortunate prisoner, we see no error in the proceedings to save him from the sentence of the latv. This opinion must be certified to the Superior Court at Rutherford, with instructions to pronounce sentence of death upon the verdict.
 

 Per Curiam. Judgment' affirmed.