**Gerald BRYANT, Appellant,**

v.

**Lawrence Edward CHERRY; Rufus L. Edmisten, Attorney General of North Carolina, Appellees.**

No. 82–6058.

United States Court of Appeals, Fourth Circuit.

Argued June 11, 1982.

Decided Sept. 10, 1982.

Phillip G. Kelley, Asheville, N. C., for appellant.

---

Barry S. McNeill, Associate Atty. Gen., Raleigh, N. C. (Rufus L. Edmisten, Atty. Gen. of N. C., Richard N. League, Sp. Deputy Atty. Gen., Raleigh, N. C., on brief), for appellees.

Before WINTER, Chief Judge, and PHILLIPS and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

Gerald Bryant, who received consecutive sentences of life plus thirty to fifty years after pleading guilty to one count each of kidnapping and armed robbery, appeals from the order of the district court denying him a writ of habeas corpus under 28 U.S.C. § 2254. Bryant contends that his guilty plea was not entered voluntarily and intelligently because the trial court failed to advise him of a seven-year mandatory minimum sentence for armed robbery. Because it is clear from the record that Bryant's alleged ignorance of the mandatory minimum sentence could not reasonably have affected his decision to plead guilty, we find that the failure of the trial court to inform him of the mandatory minimum sentence does not alter the otherwise voluntary and intelligent character of his guilty plea. The order of the district court dismissing Bryant's petition for habeas corpus relief, therefore, is affirmed.

In November 1979, Gerald Bryant was tried in a North Carolina state court on two counts of kidnapping in violation of N.C. Gen.Stat. § 14–39, two counts of assault with intent to kill in violation of N.C.Gen. Stat. § 14–32, and one count of armed robbery in violation of N.C.Gen.Stat. § 14–87. The charges carried a total possible penalty of two life sentences plus fifty-five years. During the trial, Bryant entered into a plea agreement whereby the State agreed to drop three charges if Bryant would plead guilty to one count of kidnapping and one count of armed robbery, each of which carried a possible life sentence. It was understood, as part of the bargain, that the State would recommend that Bryant receive the maximum penalty of two consecutive life sentences.

Before accepting Bryant's plea of guilty, the trial court questioned him to determine whether he was satisfied with his counsel, whether there was a factual basis for the plea, and whether the plea was given knowingly and voluntarily. Bryant acknowledged the plea agreement and indicated that he understood that the State would recommend two consecutive life sentences upon entry of his guilty plea. After accepting Bryant's guilty plea, the court sentenced him to consecutive terms of life imprisonment on the kidnapping charge and not less than 30 years or more than 50 years imprisonment on the armed robbery charge.

■ Bryant now contends that his guilty plea was involuntary and unintelligent solely because the trial court failed to advise him, as required by N.C.Gen.Stat. § 15A–1022,[1] that there is a seven-year mandatory minimum sentence for armed robbery.

■ It is well established that a guilty plea is not considered voluntary and intelligent unless it is " 'entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel ....' " *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970) (quoting *Shelton v. United States,* 242 F.2d 101, 115 (5th Cir. 1957) (Tuttle, J., dissenting); *see Cuthrell v. Director, Patuxent Institution,* 475 F.2d 1364, 1365 (4th Cir.), *cert. denied,* 414 U.S. 1005, 94 S.Ct. 362, 38 L.Ed.2d 241 (1973). We

---

1. Section 15A–1022 of the North Carolina General Statutes provides that before a superior court may accept a plea of guilty, the defendant must be informed "of the maximum possible sentence on the charge, including that possible from consecutive sentences, *and of the mandatory minimum sentence,* if any, on the charge." N.C.Gen.Stat. § 15A–1022(a)(6) (1978) (emphasis added).

We note that the failure of a state court to comply with its own rules of criminal procedure, does not by itself, raise a federal constitutional question cognizable in a habeas corpus proceeding. *See Hailey v. Dorsey,* 580 F.2d 112, 115 (4th Cir. 1978), *cert. denied, Cotton v. Dorsey,* 440 U.S. 937, 99 S.Ct. 1282, 59 L.Ed.2d 495 (1979).

have broadly defined "direct consequences" as those having a "definite, immediate and largely automatic effect on the range of the defendant's punishment." *Id.* at 1366.

We have refused, however, to apply this definition in a technical, ritualistic manner. In *Bell v. North Carolina*, 576 F.2d 564 (4th Cir.), *cert. denied*, 439 U.S. 956, 99 S.Ct. 356, 58 L.Ed.2d 348 (1978), for example, we held that the defendant's plea was voluntary even though he had not been informed that he would have to serve 20 years of a life sentence before becoming eligible for parole. Although parole ineligibility for 20 years arguably had an "automatic effect on the defendant's range of punishment,"[2] we reasoned that the defendant's ineligibility for parole was not a direct consequence of his guilty plea because he could not reasonably have expected to receive more favorable parole eligibility. *Id.* at 566 (citing *Bell v. United States*, 521 F.2d 713, 715 (4th Cir. 1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976)).

Other circuits have applied the same rationale to cases in which the trial court failed to inform the defendant of a mandatory minimum sentence. In *Serrano v. United States*, 442 F.2d 923 (2d Cir.), *cert. denied*, 404 U.S. 844, 92 S.Ct. 145, 30 L.Ed.2d 80 (1971), the defendant, who had pleaded guilty in exchange for the government's promise to recommend a prison sentence of seven years, contended that his plea was involuntary because the court had not informed him of a five-year mandatory minimum sentence. The Second Circuit rejected the defendant's claim, finding that his alleged ignorance of the mandatory minimum sentence could not have affected his decision to plead guilty since he had no reason to expect a sentence of less than seven years. *Id.* at 925. *Cf. Hill v. Estelle*, 653 F.2d 202, 206 (5th Cir. 1981), *cert. denied*, 454 U.S. 1036, 102 S.Ct. 577, 70 L.Ed.2d 481 (1982) ("In the context of a guilty plea with a recommended sentence well above the minimum under either statute, when the minimum serves no limiting effect on Hill's parole eligibility, there is no

basis on which to conclude that the difference between the two possible ranges of punishment would reasonably have had an effect on Hill's decision to plead guilty, and the voluntary, intelligent character of his guilty plea is thus not destroyed.").

We have reviewed the record in this case and conclude that Bryant was aware of all the "direct consequences" of his decision to plead guilty. Bryant had entered into a plea agreement with the understanding that the State would recommend that he receive two consecutive life sentences. When the trial court questioned Bryant regarding the voluntariness of his plea, he indicated that his plea was voluntary and that he expected to receive two consecutive life sentences. We find, under these circumstances, that Bryant's alleged ignorance of the mandatory minimum sentence of seven years for armed robbery could not reasonably have affected his otherwise voluntary and intelligent decision to enter a guilty plea. The order of the district court dismissing Bryant's petition for habeas corpus relief, therefore, is affirmed.

AFFIRMED.

---

**2.** The defendant essentially was serving a man-datory minimum sentence of 20 years.