STATE OF NORTH CAROLINA v. SHARON L. WILLIAMS

No. COA98-937

(Filed 18 May 1999)

**1. Robbery— common law—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss a common law robbery charge for insufficient evidence where defendant and Shelton smoked crack for several hours while riding around; defendant stopped at a gas station and Shelton jumped out of the truck and pointed a rifle at the victim, who was using a pay telephone; Shelton struck the victim with the rifle and took his wallet back to the truck; defendant sped off to avoid capture; and she asked Shelton about receiving some of the money.

**2. Criminal Law— habitual felon—no express admission of guilt—guilty plea**

The trial court did not err by entering judgment against defendant on an habitual felon indictment where defendant contended that she had not entered a guilty plea, but her counsel had

agreed to proceed in the manner proposed by the court; she stipulated at trial that she had attained the status of an habitual felon; the court asked defendant questions to establish a record of her plea of guilty on this charge; and defendant informed the court that she understood that her stipulations would give up her right to have a jury determine her status as an habitual felon. Defendant did in fact plead guilty to the habitual felon charge despite the fact that she did not expressly admit her guilt.

3. **Criminal Law— habitual felon—guilty plea—failure to inform of consequences**

Defendant was aware of the consequences of her guilty plea to being an habitual felon where the trial court inquired whether defendant understood that as a consequence of being an habitual felon she would be sentenced as a Class C felon as opposed to a Class G felon, defendant responded in the affirmative and indicated that she had no questions about being an habitual felon, defendant admitted that she had committed each of the felonies listed on the habitual felon indictment, and she admitted that she was proceeding voluntarily and without deals or threats.

Appeal by defendant from judgment entered 13 August 1997 by Judge Henry W. Hight, Jr., Superior Court, Wake County. Heard in the Court of Appeals 22 April 1999.

*Attorney George E. Kelly, III for the defendant.*

*Michael F. Easley, Attorney General, by Robert A. Crabill, Assistant Attorney General, for the State.*

WYNN, Judge.

"[W]here two agree to do an unlawful act, each is responsible for the act of the other, provided it be done in pursuance of the original understanding or in furtherance of the common purpose." *State v. Barnes*, 345 N.C. 184, 232, 481 S.E.2d 44, 70 (1997). Because the evidence in this case shows that the defendant acted with another to commit a robbery to receive money to purchase crack, we uphold her conviction for common law robbery. Furthermore, we find no error in classifying her as an habitual felon based on her stipulation that she had attained such status.

The facts of this case show that after being indicted for armed robbery, a jury in Wake County convicted Sharon L. Williams of com-

mon law robbery and found her to be an habitual felon. The trial court sentenced her to serve 80-105 months imprisonment.

The evidence showed that on 4 June 1997, Michael Shelton and Williams smoked crack for several hours while riding around in her truck. At a gas station, Williams stopped the truck and Shelton jumped out of the truck pointing a rifle at Victor Roughton who was using a pay phone; struck Roughton's neck with the rifle; took his wallet and returned to the truck. Thereafter, Williams sped off to avoid capture and asked Shelton about receiving some of the money that had been taken during the robbery.

Williams contends on appeal that: (1) the trial court erred in failing to grant her motion to dismiss the robbery charge for insufficient evidence, and (2) the trial court erred in entering judgment against her on an habitual felon indictment. For the reasons stated herein, we uphold the trial court's judgment.

I.

[1] Williams first argues that because there was insufficient evidence to support the common law robbery charge, the trial court should have granted her motion to dismiss. We disagree.

"Upon a motion to dismiss by a defendant, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Brayboy*, 105 N.C. App. 370, 373-74, 413 S.E.2d 590, 592 (1992). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See State v. Smith*, 300 N.C. 71, 265 S.E.2d 164 (1980). "In ruling on a motion to dismiss for insufficient evidence, the trial court must consider the evidence in the light most favorable to the State, which is entitled to every reasonable inference which can be drawn from that evidence." *State v. Dick*, 126 N.C. App. 312, 317, 485 S.E.2d 88, 91 (1997).

" '[W]here a privity and community of design has been established, the act of one of those who combined together for the same illegal purpose, done in furtherance of the unlawful design, is, in consideration of law, the act of all.' " *Barnes*, 345 N.C. at 231-32, 481 S.E.2d at 70 (quoting *State v. Haney*, 19 N.C. 390, 395 (1837)).

STATE v. WILLIAMS

[133 N.C. App. 326 (1999)]

In the subject case, Shelton testified that once he and Williams ran out of drugs, they discussed robbing someone to get money to purchase more drugs. Specifically, Shelton made the following statements at trial:

Q. Now as I understand it, you know, that the both of you did this from what you are saying?

A. It was something that we negotiated upon, yes. Talked about.

Q. Was it just one person's idea?

A. No it wasn't. Both of us agreed.

Additionally, Shelton testified that once they arrived at the gas station, Williams urged Shelton to go ahead with the robbery because no one was around the phone booth where Roughton was placing a call. Shelton further stated that Williams waited for him while the robbery was occurring and then asked for her share of the money once the robbery was completed.

Roughton testified that when Shelton was picking up the wallet, Williams was motioning for him to hurry back to the truck. Rougthon also testified that once the robbery was completed Shelton got in the truck and Williams sped off.

When viewed in the light most favorable to the State, this evidence is sufficient to establish that Williams acted with Shelton to commit the robbery in pursuance of the original understanding to receive additional money to purchase crack. Therefore, the trial court properly denied her motion to dismiss the robbery charge.

II.

[2] Williams next contends that the trial court erred in entering judgment against her on an habitual felon indictment. Specifically, she asserts that: (1) the trial court's waiver of her right to a jury verdict was erroneous because she did not enter a plea of guilty, and (2) the trial court's failure to inform her of the maximum or minimum possible sentence for the class of offense violated N.C. Gen. Stat. § 15A-1022.

"An accused cannot waive a trial by jury as long as his plea remains not guilty." *State v. Smith*, 291 N.C. 438, 440, 230 S.E.2d 644, 646 (1976). However, there is no requirement that a defendant give an express admission of guilt for a guilty plea to be valid. *See State v. Bolinger*, 320 N.C. 596, 359 S.E.2d 459 (1987) (holding that defend-

ant's guilty plea was not invalid on the basis that the trial court did not determine that he knowingly pled guilty to second-degree murder because the defendant's responses to the trial court's questioning clearly indicated that the defendant admitted killing the victim and intended to plead guilty to second-degree murder). In fact,

> while most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

*Id.* at 603, 359 S.E.2d at 463 (1987) (quoting *North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L. Ed.2d 162, 171 (1970)).

Here, Williams' counsel agreed to proceed in the manner proposed by the court. Furthermore, Williams stipulated at trial that she had attained the status of an habitual felon. After this stipulation, the trial court proceeded by asking Williams questions to establish a record of her plea of guilty on this charge. In her answers to the trial court's questions, Williams informed the court that she understood that her stipulations would give up her right to have a jury determine her status as an habitual felon.

We conclude that Williams did in fact plead guilty to the habitual felon charge despite the fact that she did not expressly admit her guilt. Therefore, her assertion that she made no such plea is without merit.

[3] Moreover, the trial court's failure to inform Williams of the maximum or minimum sentence for a Class C offense did not invalidate her guilty plea. N.C. Gen. Stat. § 15A-1022 (1996) provides that:

> (a) Except in the case of corporations or in misdemeanor cases in which there is a waiver of appearance . . . a superior court judge may not accept a plea of guilty or no contest from the defendant without first addressing him personally and:
>
> > (6) Informing him of the maximum possible sentence on the charge for the class of offense for which the defendant is being sentenced, including that possible from consecutive sentences and of the mandatory minimum sentence, if any, on the charge;

STATE v. WILLIAMS

[133 N.C. App. 326 (1999)]

Further, "[i]t is well established that a guilty plea is not considered voluntary and intelligent unless it is 'entered by one fully aware of the direct consequences. . . .' " *Bryant v. Cherry*, 687 F.2d 48, 49 (4th Cir. 1982) (quoting *Brady v. U.S.*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L. Ed.2d 747, 760 (1970)). Direct consequences have been broadly defined "as those having a 'definite, immediate and largely automatic effect on the range of the defendant's punishment.' " *Id.* at 50. (quoting *Cuthrell v. Director, Patuxent Inst.*, 475 F.2d 1364, 1366 (4th Cir.), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 362, 38 L. Ed.2d 241 (1973)). This definition, however, should not be applied in a technical, ritualistic manner. *See id; see also State v. Richardson*, 61 N.C. App. 284, 300 S.E.2d 826 (1983).

In *Bryant*, the U.S. Fourth Circuit Court applied the broad definition of "direct consequences" in holding that defendant's guilty plea was voluntary and intelligent even though the trial court failed to advise the defendant of the seven-year mandatory minimum sentence for armed robbery as provided in N.C. Gen. Stat. § 15A-1022. *Id.* The *Bryant* Court determined that the defendant's alleged ignorance of the mandatory minimum sentence could not have reasonably affected his guilty plea when he voluntarily entered into a plea agreement with the understanding that the State would recommend that he receive two consecutive life sentences. *Id.*

In the instant case, the trial court in establishing a record of Williams' guilty plea inquired whether she understood that as a consequence of being an habitual felon she would be sentenced as a Class C felon as opposed to a Class G felon. Williams responded in the affirmative and indicated that she had no questions about being an habitual felon. Furthermore, she admitted that she had committed each of the felonies listed on the habitual felon indictment and admitted that she was proceeding voluntarily and without the inducement of deals or threats.

Following guidance from the *Bryant* court in refusing to apply a technical, ritualistic approach, we find that Williams was aware of the direct consequences of her guilty plea. Therefore, we reject her second assignment of error.

No error.

Judges WALKER and HUNTER concur.