An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-437

NORTH CAROLINA COURT OF APPEALS

Filed: 2 December 2014

STATE OF NORTH CAROLINA

v.

WILLIAM TODD SCRUGGS

Rutherford County
Nos. 12 CRS 52994 & 13 CRS 927

Appeal by defendant from judgment entered 9 October 2013 by Judge J. Thomas Davis in Rutherford County Superior Court. Heard in the Court of Appeals 24 September 2014.

*Attorney General Roy Cooper, by Assistant Attorney General Teresa M. Postell, for the State.*

*Anne Bleyman, for defendant-appellant.*

STEELMAN, Judge.

The trial court properly charged the jury on the statutory requirement that defendant's violation of a domestic violence protective order must be knowing. Defendant was not entitled to the requested jury instruction on intent. Where defendant has no right to appeal issues regarding his guilty plea, those arguments are dismissed.

## I. Factual & Procedural History

William Todd Scruggs ("defendant") and Sandra Scruggs Mulray ("Sandra") were married, but separated on 16 June 2010. On the day before the separation, 15 June 2010, defendant assaulted Sandra and threatened to kill her. Following this incident, defendant moved out of their marital residence and Sandra obtained a one-year domestic violence protective order against defendant, which was valid from 28 June 2010 until 28 June 2011. The domestic violence protective order required that defendant "not assault, threaten, abuse, follow, harass (by telephone, visiting the home or workplace or other means), or interfere with [Sandra]" and that defendant "stay away" from Sandra's residence.

On 18 August 2010, defendant was convicted of three separate counts of violating the domestic violence protective order. The protective order was later renewed for another two years, making the expiration date 28 June 2013.

On 14 September 2012, at approximately 8:40 p.m., Sandra and Tracer Malray ("Tracer"), Sandra's then boyfriend, arrived at Sandra's residence. As Sandra and Tracer walked to the front door of the residence, they observed a truck suddenly turn its headlights off and come to a stop on the road in front of the

residence. Sandra recognized the truck as belonging to defendant. A male voice from the truck started shouting obscenities at Sandra including: "[y]ou effed up. I am going to kick your ass"; "[y]ou F-ing whore"; and "[t]his ain't over, Sandra." Sandra identified the voice as being that of defendant. The truck remained stopped on the road for two or three minutes, revving its engine and spinning its tires before it drove away.

After the truck left, Sandra called 911 and spoke with Deputy Thomas Keever of the Rutherford County Sheriff's Department. Several days later, Deputy Keever spoke with defendant over the telephone. Defendant told Deputy Keever that he had been drinking on the night in question when "he saw the mother fucker standing out in the yard" and then proceeded to ask "where was his bitch, slut, whore was at."

On 22 April 2013, defendant was indicted by the Rutherford County grand jury for feloniously violating a domestic violence protective order,[1] and for attaining the status of an habitual felon. On 7 October 2013, defendant's case was tried before Judge Davis and a jury. Defendant stipulated to the three prior

---

[1] N.C. Gen. Stat. § 50B-4.1(f) provides that a knowing violation of a valid protective order becomes a felony when the defendant has previously been convicted of two offenses under chapter 50B.

violations of the domestic violence protective order.[2] Defendant also pled guilty to attaining the status of an habitual felon. On 9 October 2013, defendant was found guilty of violating a domestic violence protective order. Defendant was sentenced as an habitual felon to an active prison term of 84 to 113 months.

Defendant appeals.

## II. Jury Instructions

In his first argument, defendant argues the trial court should have instructed the jury in accordance with defendant's requested instruction on intent because intent is a substantive or material feature of the crime of violating a domestic violence protective order. We disagree.

## A. Standard of Review

"Assignments of error challenging the trial court's decisions regarding jury instructions are reviewed *de novo*[.]" *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).

> This Court reviews jury instructions contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed. The party asserting

---

[2] By admitting the prior violations of the domestic violence protective order, defendant avoided having the State introduce evidence of the prior offenses before the jury. *See* N.C. Gen. Stat. § 15A-928.

error bears the burden of showing that the jury was misled or that the verdict was affected by the instruction. Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.

*State v. Blizzard*, 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (internal quotation marks, brackets, and ellipses omitted) (quoting *Bass v. Johnson,* 149 N.C. App. 152, 160, 560 S.E.2d 841, 847 (2002)).

## B. Analysis

N.C. Gen. Stat. § 50B-4.1 provides that it is a criminal offense for a person to "knowingly violate[] a valid protective order" entered pursuant to chapter 50B. With respect to this offense, the trial court instructed the jury:

> For you to find the defendant guilty of this offense, the State must prove three things beyond a reasonable doubt: First, that a valid domestic violence protective order had been issued pursuant to North Carolina law; second, that the defendant violated the valid domestic violence protective domestic order by stopping in front of the residence of Sandra Lynn Scruggs and yelling at her; [and] third, that the defendant did so knowingly.

The instruction given by the trial court substantively and accurately conveyed to the jury what constitutes the offense of violating a valid protective order under N.C. Gen. Stat. § 50B-4.1. Defendant argues that intent is a substantive or material

feature of violating a protective order, and contends that the trial court should have given the instruction on intent requested by defendant. However, N.C. Gen. Stat. § 50B-4.1 only requires that a defendant must have *knowingly* violated a valid protective order. The trial court correctly charged the jury that they must find that defendant knowingly violated the domestic violence protective order.

Further, even if the trial court had given the requested instruction on intent, it would not have changed the outcome of the trial. Defendant's requested instruction would have informed the jury that intent "must ordinarily be proved by circumstances from which it may be inferred." N.C.P.I. Crim. 120.10. The circumstances present in this case show that defendant parked his truck on the road in front of Sandra's residence while shouting obscenities at her. It strains credibility that a jury could examine defendant's actions and conclude that defendant did not have the intent to violate the terms of the valid protective order. Defendant did not simply drive by Sandra's residence. Instead, he parked his car on the road in front of Sandra's residence, and repeatedly yelled threats and obscenities at her. Given defendant's conduct and the clear provisions of the protective order, there is no

reasonable likelihood that a jury would have found that the State failed to prove an intent to violate the order. Defendant cannot demonstrate that the jury's verdict was affected by the trial court's refusal to give defendant's requested instruction on intent.

Defendant's argument is without merit.

### III. Habitual Felon Guilty Plea

In his second, third, and fourth arguments, defendant contends that the trial court erred in accepting his plea of guilty to habitual felon status; and sentencing him as an habitual felon because: (1) there was not a sufficient factual basis for the plea; (2) the trial court failed to inform defendant of the maximum possible or the mandatory minimum sentence that he could receive, and therefore the plea was not an informed choice; and (3) that the status of habitual felon violates defendant's constitutional right to be free from cruel and unusual punishment. We disagree.

"[U]nder N.C.G.S. § 15A-1444(e), a defendant who has entered a plea of guilty is not entitled to appellate review as a matter of right, unless the defendant is appealing sentencing issues or the denial of a motion to suppress, or the defendant has made an unsuccessful motion to withdraw the guilty plea."

*State v. Pimental*, 153 N.C. App. 69, 73, 568 S.E.2d 867, 870 (2002). None of defendant's claims regarding his guilty plea involve an issue that is entitled to appellate review and all of defendant's arguments regarding his guilty plea are dismissed. Defendant has filed a petition for a writ of *certiorari*. In our discretion we deny defendant's petition for writ of *certiorari*.

Even assuming *arguendo* that these issues were properly before this court, defendant's arguments are without merit. Defendant asserts that there was not a sufficient factual basis for his guilty plea. This assertion is based solely upon the argument that the allegations contained in the indictment were the sole factual basis for the plea. However, this claim is belied by the record. At the close of the State's evidence, defendant elected to admit his prior convictions of violating a domestic violence protective order. At this time, defendant also pled guilty to having obtained the status of an habitual felon. The trial court went over the three prior felonies that were the basis for the habitual felon charge as follows:

> THE COURT: At this time, too, I need to know whether your client is going to admit, deny, or remain silent as to the habitual felon status and admit the guilt as to that status set out in that indictment . . . consisting of a conviction on March 20, 1991 for felony to sell marijuana, and file No. 91 CRS 1017, and the date of that occurrence of that offense was November 6 of 1990.

The second felony that is alleged in the indictment was a felony attempted possession of a firearm by a convicted felon. It's in file No. 10 CRS 52176, conviction date of that was August 18, 2010, and the occurrence date of that offense was June 15 of 2010.

The third felony conviction that is alleged in the indictment, it is a felony offense of domestic violence protective order violation. The file No. 11 CRS 52549, conviction date of September 29, 2011, the occurrence date of July 31, 2011.

Is your client going to admit the guilt as to those matters, also?

([Defendant's counsel] nods head up and down.)

THE COURT: We will need a separate transcript for those, also, that needs to be prepared. I will go over the transcript with him in that regard.

A plea transcript was subsequently prepared, and defendant pled guilty before the trial court. The only elements of the offense of habitual felon status were the three prior felony convictions. *See* N.C. Gen. Stat. § 14-7.1 (2013). Since the trial court had just gone over the three prior felonies with defendant, the trial court stopped the prosecutor from enumerating the three prior felonies as a factual basis for the plea, and referred to the three felonies set forth in the indictment. We hold that the State presented a sufficient factual basis for defendant's plea to being an habitual felon.

Defendant's assertion that his plea was not valid because

he was not informed of the sentence he was facing is undermined by the prior decisions of this Court. "When reviewing the validity of a defendant's plea, our courts have declined to adopt a technical, ritualistic approach to determining whether or not the plea was voluntary and intelligent. Instead, we review the totality of the circumstances and determine whether non-compliance with the statute either affected defendant's decision to plead or undermined the plea's validity." *State v. Szucs*, 207 N.C. App. 694, 701-702, 701 S.E.2d 362, 367-368 (2010) (internal citation and quotation marks omitted); *see also State v. Williams*, 133 N.C. App. 326, 515 S.E.2d 80 (1999). While discussing the State's pre-trial plea offer with defendant, the trial court informed defendant that "[i]f you are found guilty you could have to – assuming a Class D felony, assuming a level 4 – you could have to serve as much as a 97 month minimum, 129 month maximum term", which defendant stated he understood. When defendant later decided to plead guilty to having obtained an habitual felon status, the trial court asked defendant if he understood that an habitual felon status would increase his potential punishment for feloniously violating a protective order from a Class H to a Class D felony. Defendant stated he understood the consequences of his plea. Although

defendant's plea transcript form is blank where the maximum and minimum sentences should be set forth, this does not invalidate his plea. Under the totality of the circumstances, we hold that defendant was aware of the direct consequences of his guilty plea and he entered into the plea voluntarily and understandingly.[3]

Finally, defendant asserts that habitual felon status violates his constitutional rights to be free from cruel and unusual punishment. However, this assertion contradicts well-established precedent. Defendant acknowledges that our Supreme Court has repeatedly rejected arguments contesting the constitutionality of habitual felon status. *See e.g.*, *State v. Todd*, 313 N.C. 110, 326 S.E.2d 249 (1985). This Court does not have the authority to overrule decisions of our Supreme Court of North Carolina.

Defendant's arguments are without merit.

NO ERROR.

Judges CALABRIA and McCULLOUGH concur.

Report per Rule 30(e).

---

[3] In the written transcript of defendant's plea, he swore under oath that he was aware of the maximum punishment, that his lawyer had explained the charges to him, that the plea was freely and voluntarily entered, and that he acknowledged that the recited terms of his plea arrangement were correct.