STATE OF NORTH CAROLINA v. JERRY WILLIAM McNEILL, JR.

No. COA02-642

(Filed 20 May 2003)

## 1. Sentencing— prior record points—erroneous assessment

A sentence based on an erroneous prior record level was remanded. The State conceded that the trial court erroneously assessed points under provisions involving offenses committed while on probation and offenses in which all of the elements were present in a prior offense. The court also erred by assessing separate points where defendant pled guilty to two offenses on the same day but there was a discrepancy in filing dates. N.C.G.S. § 15A-1340.14(b)(6), (b)(7), and (d).

**2. Sentencing— habitual felon—guilty plea—defendant's presence in courtroom**

The trial court did not err by accepting a plea to being an habitual felon where defendant asserted that an exchange with defense counsel about the possible maximum sentence while the court was "at ease" suggested that defendant was not present in the courtroom during the exchange. There is nothing in the record suggesting that defendant was not present, and the transcript suggests the opposite.

**3. Sentencing— habitual felon—guilty plea—defendant imperfectly informed of maximum sentence—no prejudice**

There was no prejudice in the acceptance of defendant's habitual felon guilty plea where the trial judge may not have personally informed defendant of the maximum sentence. Although an exchange between defendant and the judge was an imperfect attempt to describe the maximum possible sentence; there was no suggestion before or after the plea that defendant did not understand he faced the possibility of enhanced sentences. Considering the totality of circumstances, noncompliance with N.C.G.S. § 15A-1022(a)(6) neither affected defendant's decision to plead nor undermined the validity of the plea.

Appeal by defendant from judgment entered 24 January 2002 by Judge B. Craig Ellis in Cumberland County Superior Court. Heard in the Court of Appeals 12 March 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General Charles J. Murray, for the State.*

*Jeffrey Evan Noecker, for defendant.*

LEVINSON, Judge.

On 22 January 2002, defendant was tried and convicted of the following felonies: (1) attempted robbery with a dangerous weapon, (2) assault with a deadly weapon inflicting serious injury, (3) first degree burglary, and (4) conspiracy to commit robbery with a dangerous weapon. In addition, defendant was indicted as a habitual felon, and he subsequently pled guilty to his status as such. Defendant was sentenced to three consecutive active terms of imprisonment. Each sentence was for a minimum term of 116 months and a corresponding maximum of 149 months in prison. Defendant gave notice of appeal in open court on 24 January 2002.

STATE v. McNEILL

[158 N.C. App. 96 (2003)]

## I. DEFENDANT'S PRIOR RECORD LEVEL

[1] On appeal defendant contends the trial court erred in assessing him 3 separate points on the Prior Record Level Worksheet (AOC-CR-600) pursuant to N.C.G.S. § 15A-1340.14(b). First, defendant argues he was incorrectly assessed one (1) point under the following provision:

> (6) If all the elements of the present offense are included in any prior offense for which the offender was convicted, whether or not the prior offense or offenses were used in determining prior record level, 1 point.

N.C.G.S. § 15A-1340.14(b)(6) (2001). Defendant's prior convictions included felony forgery, felony possession of a stolen vehicle, felony possession with intent to manufacture, sell and deliver cocaine, common law robbery, and possession of stolen property. The State does not contend all of the elements of any present offense are included in the elements of any prior offense. It concedes the trial court erroneously assessed defendant one (1) point under G.S. § 15A-1340.14(b)(6).

Secondly, defendant argues the trial court erred in assessing him 1 point under the following provision:

> (7) If the offense was committed while the offender was on supervised or unsupervised probation, parole, or post-release supervision, or while the offender was serving a sentence of imprisonment, or while the offender was on escape from a correctional institution while serving a sentence of imprisonment, 1 point.

N.C.G.S. § 15A-1340.14(b)(7) (2001). There is no record evidence that supports an assessment of one (1) point under this portion of the statute. Again, the State concedes the trial court erroneously assessed defendant one (1) point under this provision.

Finally, defendant contends the trial court erred in assessing him two (2) separate points pursuant to N.C.G.S. § 15A-1340.14 (d) for offenses that he pled guilty to and was convicted of in the same Superior Court session. The relevant portion of the statute provides:

> (d) Multiple Prior Convictions Obtained in One Week.—For purposes of determining the prior record level, if an offender is convicted of more than one offense in a single superior court during

one calendar week, only the conviction for the offense with the highest point total is used. . . .

N.C.G.S. § 15A-1340.14 (d) (2001).

Although, on 11 January 1994 defendant pled guilty to both offenses of common law robbery and possession of stolen goods, the Judgment and Commitment form for the offense of possession of stolen goods was not filed until 14 December 2001. Apparently, this discrepancy in filing dates led the trial court to assign separate points for each offense. However, because "[f]or the purpose of imposing sentence, a person has been convicted when he has been adjudged guilty or has entered a plea of guilty or no contest," N.C.G.S. § 15A-1331(b) (2001), the trial court erred in assessing defendant separate points pursuant to G.S. § 15A-1340(d).

As a result of the trial court's erroneous assessment of three (3) additional points, defendant was sentenced with an erroneous prior record level. Such error requires remand. *State v. Williams*, 335 N.C. 501, 565 S.E.2d 609 (2002); *see also* N.C.G.S. § 15A-1446(d)(18) (2001).

II. DISCLOSURES NECESSARY TO PLEA PROCEEDINGS

Next, defendant contends the trial court erred in accepting his plea to the status of habitual felon. He contends (1) the defendant may not have been present in the courtroom during all relevant times; (2) the court failed to inform him of the maximum possible sentence as required by N.C.G.S. § 15A-1022(a)(6); and (3) he was prejudiced by these errors, requiring reversal. We turn first to additional facts necessary to our analysis.

Additional Facts

Out of the presence of the jury, the trial court judge endeavored to adjudicate defendant's guilty plea to habitual felon status. N.C.G.S. § 15A-1021, *et seq.* The defendant was sworn and the judge asked him whether he understood he had the right to remain silent; whether the habitual status had been explained to him by his attorney and whether he understood the nature and elements of the same; whether he was satisfied with his attorney's services; whether the attorney discussed defenses, if any, to the charge; whether defendant understood he could plead not guilty and demand a trial on the habitual status during which he would have the opportunity to confront and cross-examine witnesses; whether he understood that he gave up such

rights if he pled guilty; and whether he personally pled guilty "to the status of habitual offender should you be found guilty of the charges that are being tried now[]" (emphasis added). Defendant responded affirmatively to all these inquiries. Defendant also informed the court of his level of education and that he was not under the influence of impairing substances. Further, in response to additional inquiries of the court, defendant stated he was pleading guilty as a result of his own free will and had not agreed to do so as a result of any arrangement between he and the State or because of any threats or promises. During this exchange between the judge and defendant, the following occurred (hereinafter "first exchange"):

> THE COURT: Do you understand that habitual offender status would mean that you could be punished for the charges now before you as a Class C felon and a Class C felon and—the maximum punishment under the statute as a Class C felon is 261 months in prison? That doesn't mean that you would get 261. There are several other factors that are factored in to determine what the appropriate sentence would be, but under the law, that's the maximum for a Class C felony. That you would be punished as a Class C felon as opposed to—let's see. The charge of attempted robbery with a dangerous weapon is a Class D felony. First degree burglary is a Class D felony. Assault with a deadly weapon inflicting serious injury is a Class E felony and conspiracy to commit robbery with a dangerous weapon is a Class E felony. By being determined to be an habitual felon, instead of being punished at the levels set forth in the statute for those particular offenses, you would be punished as a Class C felony which is higher than either one of those. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

(emphasis added).

Immediately following this dialogue, the judge instructed defense counsel to "look over this form with (defendant)" and to sign the same. The transcript at this point in the proceedings indicates the court was "at ease." During this "at ease" period, the court reporter continued to record the proceedings; the trial court and assistant district attorney discussed when the State might conclude its presentation of evidence on the underlying offenses. There is no indication whatsoever that anyone left the courtroom. There is less than one full page of the transcript between the "at ease" juncture and the following exchange (hereinafter "second exchange"):

THE COURT: I would say y'all are talking about the maximum. There are <u>four charges</u>.

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: And <u>all four charges</u> could be elevated to the full 261 and then they could be [sic] <u>run consecutively</u> so it could be 261 times four. I guess, so the <u>maximum</u>, if <u>he</u> were to be found guilty of—if <u>he</u> were found guilty of everything, the <u>maximum punishment would be 1,044 months</u>. That's the very maximum that the law would provide in North Carolina.

(emphasis added). Immediately thereafter, defense counsel was granted permission to approach the bench. From the record it is evident the judge did not have the signed copy of the transcript of plea during the exchanges described above.[1] The transcript of plea itself states "the maximum punishment is 261 months." After the second exchange, the judge stated:

. . . I will find that there is a factual basis for the entry of this status plea, that he is satisfied with his lawyer, is competent to stand trial on this particular issue and that it is a plea of guilty to the status of habitual felon, should he be found guilty, is freely, voluntarily and understandingly given and I would accept that and record that.

Thereafter, the court announced it would "be in recess until the morning. . . ." The transcript then states "the trial adjourned at 5:20 p.m., January 23, 2002, and reconvened at 9:30 a.m., January 24, 2002."

---

**[2]** Defendant first contends the record fails to reflect he was in the courtroom and privy to the second exchange.

Because the transcript states the court was "at ease," defendant asserts, this suggests defendant was not present in the courtroom during the second exchange. The brief period between the first and second exchanges was to provide defense counsel an opportunity to review the transcript of plea with defendant.[2] Defendant also con-

---

1. This is made more evident by the fact the transcript shows defense counsel later approached the bench and retrieved the signed transcript of plea to "certify" it.

2. Though not essential to our holding, our reading of the transcript suggests neither defendant nor defense counsel left the courtroom <u>between</u> the first and second exchanges.

tends that the fact the judge referred to the defendant as "he" during the second exchange suggests defendant was not present or that this discussion took place at the bench, out of defendant's earshot. We do not agree.

There is nothing in the transcript or affirmatively shown in the record suggesting defendant was not present through the time the judge announced court would be in "recess." Defendant would have us presume he was not in the courtroom when the transcript clearly suggests the opposite. For example, the plea was adjudicated on the record only *after* the judge's second statement. Accepting defendant's argument would necessarily require us to find the trial judge adjudicated the plea in the absence of the defendant; this is not supported by the record. We are unpersuaded by defendant's contention that he was not in the courtroom at all relevant times or was not privy to the second exchange.

**[3]** Defendant next contends the trial judge did not personally inform him of the maximum sentence pursuant to N.C.G.S. § 15A-1022.

N.C.G.S. § 15A-1022(a)(6) (2001) provides:

(a) . . . [A] superior court judge may not accept a plea of guilty or no contest from the defendant without first addressing him personally and:

. . . .

(6) Informing him of the maximum possible sentence on the charge for the class of offense for which the defendant is being sentenced, including that possible from consecutive sentences, and of the mandatory minimum sentence, if any, on the charge. . . .

(emphasis added). Defendant contends even if he was present in court and heard the second exchange, the court nevertheless failed to inform him "personally" of the maximum as illustrated by the transcript of plea and first exchange. The State contends the judge's first exchange with defendant, standing alone, sufficiently comports with G.S. § 15A-1022(a)(6).[3]

The State's argument is not without force. In the first exchange, after enumerating the underlying offenses and the associated, ordi-

_____

3. As the second exchange was not directly between the judge and defendant, it is not considered when determining whether the judge addressed defendant "personally" about the possible maximum resulting from consecutive sentences.

nary Structured Sentence Levels, the judge's statement accurately explains that the "charges" (also "offenses") would be punished at the higher level. Defendant's interpretation of the first exchange suggests, in part, that defendant did not have an understanding he was on trial for (and could be sentenced for) more than one offense. This is not supported by the record. In our view, the first exchange was an attempt, albeit imperfect, on the part of the judge to describe the maximum possible sentence associated with each of the enumerated felonies for which defendant was being tried, 261 months. Defendant nevertheless contends the first exchange, considered together with a transcript of plea that asserts the "maximum [of] 261 months" demonstrates the statutory violation. Assuming, *arguendo*, the trial court did not address defendant "personally" about the maximum potential sentence and therefore failed to comply with the requirements of G.S. § 15A-1022(a)(6), we next consider whether it amounts to prejudice, requiring the plea to be set aside.

Defendant argues he was prejudiced because he "received a sentence greater than the maximum given to him by the trial judge and reflected on the transcript." He further argues that the plea was not the product of "informed choice" and that he was "induced" into entering a guilty plea "when he would not otherwise have done so had he been fully and properly informed" of the maximum possible sentence.

G.S. § 15A-1022 (a)(6) is based upon principles in *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274 (1969). *State v. Bozeman*, 115 N.C. App. 658, 661, 446 S.E.2d 140, 142 (1994). A defendant's plea must be made voluntarily, intelligently and understandingly. *Boykin*, 395 U.S. at 244, 23 L. Ed. 2d at 280. The defendant must be made aware of all "direct consequences" of his plea. *Bozeman*, 115 N.C. App. at 661, 446 S.E.2d at 142 (discussing differing standards and burdens of proof when an error is grounded in constitutional principles as opposed to violations that do not implicate the Constitution) (citations omitted). Our Courts have rejected a ritualistic or strict approach in applying these standards and determining remedies associated with violations of G.S. § 15A-1022. *State v. Richardson*, 61 N.C. App. 284, 300 S.E.2d 826 (1983). Even when a violation occurs, there must be prejudice before a plea will be set aside. *Bozeman*, 115 N.C. App. at 660, 446 S.E.2d at 141. Moreover, in examining prejudicial error, courts must "look to the totality of the circumstances and determine whether non-compliance with the statute either affected defendant's decision to plead or undermine

the plea's validity." *State v. Hendricks*, 138 N.C. App. 668, 670, 531 S.E.2d 896, 898 (2000).

Because of the additional term of imprisonment associated with habitual offender status, this constitutes a direct consequence of one's plea to the same. *See State v. Williams*, 133 N.C. App. 326, 331, 515 S.E.2d 80, 83 (1999) (defining direct consequences " 'as those having a 'definite, immediate and largely automatic effect on the range of the defendant's punishment' ") (quoting *Bryant v. Cherry*, 687 F.2d 48, 50, *cert. denied*, 459 U.S. 1073, 74 L. Ed. 2d 637 (4th Cir. 1982)). As a result, the State must prove the error was harmless beyond a reasonable doubt. *Bozeman*, 115 N.C. App. at 660-61, 446 S.E.2d at 142.

In the instant case, we find an absence of prejudice. The first exchange, standing alone, contemplated that defendant would be subject to enhanced sentencing for any one or more of the offenses for which he might be convicted. In addition, the second exchange clearly stated defendant faced a maximum of 1,044 months in the event he was convicted of all underlying offenses. Significantly, the second exchange occurred before the adjudication of plea. The defendant did not object at any time contemporaneous with the adjudication of plea (or subsequently during sentencing) or contend he was not informed or aware of the maximum possible sentence. There was no suggestion before or after the plea was adjudicated that defendant did not understand he faced the possibility of enhanced sentences as to each of the underlying substantive offenses.[4] Nor did defendant file a motion to withdraw his plea before sentencing, either—something that would have given defendant an opportunity to challenge the plea on the basis he was not aware of the maximum possible sentence associated with consecutive habitual-enhanced sentences. *See State v. Handy*, 326 N.C. 532, 391 S.E.2d 159 (1990). Finally, considered in tandem, the first and second exchanges defeat defendant's argument. In this context, considering all the circumstances, the fact the transcript of plea noted "261 months" does not negate our conclusion.

We are unpersuaded, considering the totality of circumstances, that any noncompliance with G.S. § 15A-1022 (a)(6) either affected defendant's decision to plead or undermine the plea's validity. *Hendricks*, 138 N.C. App. at 670, 531 S.E.2d at 898. On these

---

4. In his brief, defendant asserts, "if he was . . . present, [he] was not given the opportunity to respond, or change or withdraw his plea, or indicate that he understood this greatly increased potential maximum sentence." This assertion is without merit.

facts, therefore, we hold there is a showing of harmless error beyond a reasonable doubt. Defendant's assignment of error is overruled.

The events associated with defendant's plea to habitual felon status are neither ideal nor preferable means for trial courts to satisfy the requirements of G.S. § 15A-1022. Trial courts should be mindful of these statutory requirements and exercise diligence and caution in their application.

## III. OTHER ASSIGNMENTS OF ERROR

After careful review, we find defendant's remaining assignments of error without merit and they are, therefore, overruled.

The case is remanded for re-sentencing in conformity with Part I of this opinion. The defendant's plea to habitual felon status is affirmed. We leave undisturbed the convictions associated with the remaining offenses.

Affirmed in part, reversed and remanded in part.

Judges WYNN and TIMMONS-GOODSON concur.