An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-300

Filed 18 March 2026

Guilford County, No. 22CR365398-400

STATE OF NORTH CAROLINA

v.

DEMIRO RICK JOHNSON, Defendant.

Appeal by Defendant from judgment and order entered 25 September 2024 by Judge Stephanie L. Reese in Guilford County Superior Court. Heard in the Court of Appeals 14 January 2026.

> *Attorney General Jeff Jackson, by Assistant Attorney General Kyla Wonder, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Brandon Mayes, for Defendant.*

GRIFFIN, Judge.

Defendant Demiro Rick Johnson appeals from the trial court's judgment and order entered after pleading guilty to one felony count of statutory rape of person fifteen or younger and one felony count of statutory sex offense with person fifteen or younger. Defendant submits a petition for writ of certiorari arguing the trial court

erred by not informing him that the maximum sentences could run consecutively, thereby making his plea not knowingly and voluntarily entered. Defendant also argues the trial court erred by placing Defendant on lifetime satellite-based monitoring. We deny Defendant's PWC. However, we hold the trial court did err by placing Defendant on lifetime SBM without making required findings and reverse on that issue alone.

## I.  Factual and Procedural Background

During the fall and winter of 2021 and into 2022, Defendant engaged in sexual intercourse and other sexual acts with A.C., a minor aged fourteen and fifteen years old at the time of Defendant's sexual relations with her. Defendant's sex with A.C. resulted in A.C.'s pregnancy, which was a result of Defendant's sexual intercourse with A.C. around A.C.'s fifteenth birthday. On 10 December 2022, A.C. gave birth to a baby girl, who was DNA-tested and matched to Defendant.

On 13 March 2023, Defendant was indicted on one felony count of statutory rape of person fifteen or younger and one felony count of statutory sex offense with person fifteen or younger for offenses in March 2022. On 5 June 2023, Defendant was indicted on two felony counts of statutory rape of a child fifteen or younger for an offense on 1 October 2022. On 20 September 2024, Defendant pled guilty to one felony count of statutory rape of person fifteen or younger and one felony count of statutory sex offense with person fifteen or younger; stipulating to Prior Record Level I for felony sentencing purposes and the aggravating factor of occupying a position of

authority over other participants as a religious mentor; and waiving any sort of notice that may be required in order to pursue sentencing in the aggravated range. The trial court went through the plea colloquy, which included the following in relevant part,

> THE COURT: You also understand that following your plea today -- well, excuse me. Do you understand that with your plea today you are waiving these and your other valuable constitutional rights to a jury trial?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you also understand that following your plea today, your right to appeal these convictions is going to be limited?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Have you agreed to plead guilty to two counts -- well, one count of statutory rape of a child under the age of fifteen and statutory sex offense with a child under the age of fifteen -- or equal or under the age of fifteen, I think, is the way the statute reads. Those are both B1 felonies. They both separately carry the maximum sentence of 592 months as a possible sentence.
>
> THE DEFENDANT: Yes, ma'am.

When asked twice if he had any questions about anything in the colloquy, Defendant answered, "No, ma'am." The plea transcript reflected a total maximum punishment of 1,184 months. After this colloquy, the State presented a summary of facts to which Defendant did not object but did add there was no evidence of force in this case. The trial court then accepted the plea, finding Defendant pled "freely, voluntarily, and

understandingly," and sentenced Defendant to two 205-306 month active sentences to run consecutively with credit for 612 days time served.

The trial court then addressed SBM and sex offender registration. The State presented Defendant's Static-99R Form to the trial court, which found Defendant to have a total score of "2," indicating a status of "Average Risk" or "moderate-low risk." The trial court found, in relevant part,

> THE COURT: First, under the findings of fact Number 1, that it's an offense against a minor. We want (a) where the defendant was not the parent. Under (b), this is defined as under statute as a sexually violent offense. Defendant is, under 2, not a recidivist. Under 3, he is not a re-offender. Under 4, he has not been classified as a sexually violent predator. Number 6, this did -- wait. Excuse me. Number 5, the offense of conviction is an aggravated offense, so I have to find the aggravator, which you all agreed on.
>
> [THE STATE]: Well, no. It's an aggravated offense by statute.
>
> THE COURT: Okay.
>
> [THE STATE]: The statutory rape itself is considered an aggravated sex offense.
>
> THE COURT: Thank you. So the offense is aggravated under Number 5. On Number 6, it did involve the physical, mental, or sexual abuse of a minor.

The trial court found Defendant is required to register as a sex offender for life. Regarding SBM, the court said,

> Because I found Number 5, that the offense is an aggravated offense, under the way the statute's written right now, I now have to find he should be ordered to

satellite-based monitoring, but that, in fact, that's [] that he should be required to do that for the rest of his life.

I will note that there is a lot of changing law on that, and that may change before you are released, [Defendant]. You're just going to have to check with prisoner legal services at that time to see how the law is at the time you're released.

Defendant objected to the trial court's order for lifetime SBM. Defendant entered an oral notice of appeal in court and timely filed a written notice of appeal on 11 October 2024. Defendant filed his PWC on 28 May 2025.

## II. Analysis

Defendant submits a petition for writ of certiorari arguing the trial court erred by not informing him that the maximum sentences could run consecutively, thereby making his plea not knowingly and voluntarily entered. Defendant also argues the trial court erred by placing him on lifetime SBM based solely on a Static-99R assessment that placed him in a low-risk category. We address each argument.

## A. Petition for Writ of Certiorari

Defendant first argues "[t]he trial court erred in accepting [his] guilty plea where the [trial] court did not inform [him] that the maximum sentences could run consecutively, and the [trial] court, in fact, ran the sentences consecutively." Thus, Defendant argues his plea was not knowingly and voluntarily entered. However, Defendant "acknowledges he does not have a right to appeal whether his plea was knowing and voluntary." *See* N.C. Gen. Stat. § 15A-1444(a2) (2025) (stating the

specific circumstances under which a guilty plea may be appealed as of right). Thus, Defendant submits a PWC and argues this Court should grant the PWC because "review by writ of certiorari is appropriate when a defendant is asserting that the trial court failed to comply with the provisions of N.C.G.S. § 15A-1022" and "because [Defendant] argues a meritorious issue on appeal." We disagree and deny the PWC.

Although Defendant may file a PWC to review an issue not appealable by right, *see* N.C. Gen. Stat. § 15A-1444(g) (2025) ("Review by writ of certiorari is available when provided for by this Chapter, by other rules of law, or by rule of the appellate division."); N.C. R. App. P. 21(a) (allowing writs of certiorari to be filed); *State v. Carter*, 167 N.C. App. 582, 585, 605 S.E.2d 676, 678 (2004) ("[A] defendant may petition for writ of certiorari when he is challenging the procedures employed in accepting a guilty plea."), "[c]ertiorari is a discretionary writ, to be issued only for good and sufficient cause shown," *State v. Grundler*, 251 N.C. 177, 189, 111 S.E.2d 1, 9 (1959) (citing *Womble v. Moncure Mill & Gin Co.*, 194 N.C. 577, 579, 140 S.E. 230, 231 (1927)).

Our Supreme Court has outlined a two-factor test to determine whether an appellate court should grant certiorari. "First, a writ of certiorari should issue only if the petitioner can show 'merit or that error was probably committed below.'" *Cryan v. Nat'l Council of YMCAs. of U.S.*, 384 N.C. 569, 572, 887 S.E.2d 848, 851 (2023) (quoting *State v. Ricks*, 378 N.C. 737, 741, 862 S.E.2d 835, 839 (2021)). "Second, a writ of certiorari should issue only if there are 'extraordinary circumstances' to justify

it." *Id.* at 572–73, 887 S.E.2d at 851 (quoting *Moore v. Moody*, 304 N.C. 719, 720, 285 S.E.2d 811, 812 (1982)). "Ultimately, the decision to issue a writ of certiorari rests in the sound discretion of the presiding court." *Id.* at 573, 887 S.E.2d at 851 (citing *Ricks*, 378 N.C. at 740, 862 S.E.2d at 838).

First, we hold Defendant's PWC is not meritorious nor does it show "that error was probably committed below." *Id.* at 572, 887 S.E.2d at 851. N.C. Gen. Stat. § 15A-1022 instructs a trial court on advising guilty pleas, commanding the trial court not to accept a guilty plea from a defendant without, in relevant part,

> [i]nforming him of the maximum possible sentence on the charge for the class of offense for which the defendant is being sentenced, including that possible from consecutive sentences, and of the mandatory minimum sentence, if any, on the charge[.]

N.C. Gen. Stat. § 15A-1022(a)(6) (2025). We reject "a ritualistic or strict approach in applying these standards and determining remedies associated with violations of [section] 15A-1022." *State v. McNeill*, 158 N.C. App. 96, 103, 580 S.E.2d 27, 31 (2003) (citing *State v. Richardson,* 61 N.C. App. 284, 289, 300 S.E.2d 826, 829 (1983)). Further, "[e]ven when a violation occurs, there must be prejudice before a plea will be set aside." *Id.* at 103, 580 S.E.2d at 31 (citing *State v. Bozeman,* 115 N.C. App. 658, 660, 446 S.E.2d 140, 141 (1994)).

Here, during the plea colloquy, the trial court said,

> Have you agreed to plead guilty to two counts -- well, one count of statutory rape of a child under the age of fifteen and statutory sex offense with a child under the age of

> fifteen -- or equal or under the age of fifteen, I think, is the way the statute reads. *Those are both B1 felonies. They both separately carry the maximum sentence of 592 months as a possible sentence.*

In other words, the trial court informed Defendant of the "maximum possible sentence" for the two B1 class felonies for which he was charged as 592 months *each*. As reflected in the plea transcript, this totaled 1,184 months maximum consecutively. The trial court did not expressly add the two maximum sentences together verbally and tell Defendant that the separate maximum sentences of 592 months added together totaled a maximum sentence of 1,184 months if run consecutively. But holding that the writ is meritorious or that error was probably committed below because the trial court did not verbally add and state to Defendant that the separate maximum sentences of 592 months for each felony totaled 1,184 months would implement "a ritualistic or strict approach" this Court has long rejected. *McNeill*, 158 N.C. App. at 103, 580 S.E.2d at 31.

Defendant argues this Court's opinion in "*State v. Reynolds* controls." In *Reynolds*, this Court held when "the trial court told [a defendant] the maximum possible sentence would be 168 months' imprisonment when, in fact, the maximum sentence was 171 months," 218 N.C. App. 433, 434, 721 S.E.2d 333, 334 (2012), was not harmless error, *id.* at 436, 721 S.E.2d at 335, because "when the trial court accepted [the d]efendant's guilty plea, [the d]efendant had been misinformed as to the maximum sentence he would receive as a result of his guilty plea," *id.* at 437, 721

S.E.2d at 335–36. But as addressed above, Defendant was not misinformed of his maximum potential sentence if it was to run consecutively. While it would have been best for the trial court to expressly say the two 592-month maximum sentences totaled 1,184 months if run consecutively, Defendant was informed that his maximum sentences for the two felonies would be 592 months each, indicating a total possible maximum of 1,184 months consecutively, denoted by the trial court's use of the words "*[t]hey both separately carry* the maximum sentence of 592 months as a possible sentence." Therefore, we hold the Defendant's PWC fails to meet the first part of the test outlined in *Cryan*.

Second, even assuming arguendo the first part of the test was met, we hold Defendant's PWC does not present extraordinary circumstances. "We require extraordinary circumstances because a writ of certiorari 'is not intended as a substitute for a notice of appeal.' If courts issued writs of certiorari solely on the showing of some error below, it would 'render meaningless the rules governing the time and manner of noticing appeals.'" *Id.* (quoting *Ricks*, 378 N.C. at 741, 862 S.E.2d 839). We recognize "[t]here is no fixed list of 'extraordinary circumstances' that warrant certiorari review, but this factor generally requires a showing of substantial harm, considerable waste of judicial resources, or 'wide-reaching issues of justice and liberty at stake.'" *Id.* (quoting *Doe v. City of Charlotte*, 273 N.C. App. 10, 23, 848 S.E.2d 1, 11 (2020)). "Although our Courts have not specifically defined what is required to show extraordinary circumstances, substantial harm may be shown

where 'the fundamental rights of a [party] are at stake' in the balance of the appeal." *State v. Owens*, 299 N.C. App. 290, 294, 917 S.E.2d 505, 509 (2025) (alteration in original) (quoting *In re S.D.H.*, 296 N.C. App. 392, 398, 908 S.E.2d 868, 875 (2024)).

Here, Defendant's argument does not constitute an extraordinary circumstance. In his PWC, Defendant contends his argument "will promote the ends of justice." Defendant also argues "[w]ithout informing [him] he could face consecutive sentences greater than 592 months, [Defendant] faced the harm of 20 more months' incarceration than the trial court informed him he could face," constituting a substantial harm. Here, the trial court informed Defendant during the plea colloquy both felonies Defendant pled guilty to "carr[ied] the maximum sentence of 592 months as a possible sentence," totaling 1,184 months maximum for both offenses. Further, Defendant stated twice he had no questions about anything, nor did he object to the sentence during the colloquy. Thus, since Defendant's PWC is premised on sentences well within the maximum sentences based on two felonies he pled guilty to and to which he had no questions or objections during the colloquy, Defendant's PWC does not constitute a substantial harm for our review, much less any other extraordinary circumstance. *See Cryan,* 384 N.C. at 573, 887 S.E.2d at 851 (holding this Court was correct when it granted a PWC implicating a "relatively new statutory scheme" and the trial court's subject-matter jurisdiction).

Therefore, within our discretion, we hold Defendant did not meet either part of the test to grant a PWC and deny Defendant's PWC.

**B. Satellite-Based Monitoring**

Second, Defendant argues "[t]he trial court erred in ordering [Defendant] to submit to any SBM where [Defendant]'s STATIC-99R score was incorrect, the only evidence considered was his STATIC-99R putting him in the low-risk range for reoffending, and the trial court made no supplemental findings supporting the ultimate finding he required the highest level of supervision."

"For SBM orders, we review 'the trial court's findings of fact to determine whether they are supported by competent record evidence, and we review the trial court's conclusions of law for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found.'" *State v. Leggett*, --- N.C. App. ----, ----, --- S.E.2d ----, ----, 2026 WL 40408, at *6 (2026) (quoting *State v. Barton*, 295 N.C. App. 182, 187, 905 S.E.2d 230, 234 (2024)).

This Court recently evaluated our General Statutes and precedent regarding SBM in *Leggett*, relying heavily, in part, on *Barton*. Thus, we follow our analysis in *Leggett*. In *Leggett*, we reviewed the statutory requirements under section 14-208.40A and this Court's corresponding precedent to determine whether the trial court could order lifetime SBM for a defendant. *Id.* at *6-7. As our analysis outlined, once a trial court has found a defendant's conviction offense was an aggravated offense, among other relevant factors, based on evidence the State shall present, the trial court must order a Static-99R risk assessment. *Id.* at *6 (citing N.C. Gen. Stat. § 14-208.40A(a)-(c) (2023)). Then, "[u]pon receipt of a risk assessment . . . the court

shall determine whether, based on the Department's risk assessment and all relevant evidence, the offender requires the highest possible level of supervision and monitoring." *Id.* at *6 (quoting N.C. Gen. Stat. § 14-208.40A(c1)).

Pursuant to section 14-208.40, this Court held if the Static-99R score does not indicate a defendant is high risk, the State must present additional evidence and the trial court make additional findings of fact to support ordering a defendant to lifetime SBM. *See Barton*, 295 N.C. App. at 188, 905 S.E.2d at 235 ("A trial court's order requiring SBM must be reversed, without remand, if the defendant is low risk, and 'the State presented no evidence to support findings of a higher level of risk or to support [SBM].'" (quoting *State v. Jones*, 234 N.C. App. 239, 243, 758 S.E.2d 444, 448 (2014))); *see also State v. Belfield*, 297 N.C. App. 817, 823, 911 S.E.2d 754, 759 (2025) ("Absent a 'high risk' Static-99 score, in addition to the State offering additional evidence, the trial court must make additional findings in order to justify a maximum SBM sentence." (citation modified)).

Thus, based on the statute and this Court's precedent regarding the statute, this Court in *Leggett* reversed a trial court's order of lifetime SBM where the Static-99R came back with a score of "0," "Below Average Risk;" the State did not present any additional evidence supporting the highest possible level of supervision and monitoring; and the trial court did not make any additional findings of fact. 2026 WL 40408, at *7 n.6.

Here, neither party contests the presence of an aggravated offense, and the

Static-99R presented to the trial court calculated a total score of "2" for Defendant, placing him in "moderate-low" to "[a]verage risk." However, Item #1 of the Static-99R calculates the score at "0," meaning Defendant's "[a]ge at release from index sex offence" would be between the ages of 35 to 39.9. But Defendant's date of birth is 20 July 1987 and the Static-99R was completed on 20 September 2024, meaning Defendant was 37 years and 2 months old. Thus, with the sex offense convictions here having a minimum sentence of 205 months each, totaling a minimum 410 months (34 years 2 months), the record evidence does not support the calculation of Item #1 as "0" and, consequently, the total calculation of the Static-99R as "2." Rather, taking the 410 months minimum sentence (34 years 2 months), subtracting the 612 days of credit for time served for the statutory rape charge (approximately 1 year and 8 months) totals approximately 390 months (32 years and 6 months), putting Defendant's age at release over 60 based on the minimum sentence with time served added to his age. Thus, the record indicates the score for Item #1 should have been calculated at "-3," "[a] ged 60 or older," for "[a]ge at release from index sex offence." Therefore, the total Static-99R score would not be "2;" rather, it would be "-1," "Below Average Risk" or "low risk."

Based on that "Below Average Risk" or "low risk," the State was required to present additional evidence to support a trial court's findings for lifetime SBM. *See id.* at *7; *Barton*, 295 N.C. App. at 188, 905 S.E.2d at 235 ("A trial court's order requiring SBM must be reversed, without remand, if the defendant is low risk, and

- 13 -

'the State presented no evidence to support findings of a higher level of risk or to support [SBM].'"); *Belfield*, 297 N.C. App. at 823, 911 S.E.2d at 759 ("Absent a 'high risk' Static-99 score, in addition to the State offering additional evidence, the trial court must 'make additional findings in order to justify a maximum SBM sentence." (citation modified)).  The State did not present any additional evidence here to support lifetime SBM, and the trial court did not find additional findings of fact supporting lifetime SBM apart from "matters already addressed in [D]efendant's Static-99 risk assessment, such as [D]efendant's underlying offense."  *Belfield*, 297 N.C. App. at 823, 911 S.E.2d at 759 (quoting *Thomas*, 225 N.C. App. 631, 633–34, 741 S.E.2d 384, 386 (2013)).

The State argues though "a court may be required to make additional findings of fact with a low-risk score under the different SBM procedure N.C.G.S § 14-208.40B, the procedure in N.C.G.S § 14-208.40A requires the court 'only to consider the elements of the offense of which a defendant was convicted and is not to consider the underlying factual scenario giving rise to the conviction,'" quoting *State v. Sprouse*, 217 N.C. App. 230, 239, 719 S.E.2d 234, 242 (2011).  Alternatively, the State argues "[a]ssuming arguendo that the court was required to make additional findings, the case should be remanded to the court to make additional findings for ordering SBM," citing *State v. Mack*, 277 N.C. App. 505, 521, 860 S.E.2d 271, 281–82 (2021).  But neither argument matches where our law stands right now.

First, section 14-208.40B applies "[w]hen a defendant has been convicted of an applicable offense, and the trial court has not previously determined during the sentencing phase whether SBM is required." *Belfield*, 297 N.C. App. at 822, 911 S.E.2d at 759. But after the initial procedural differences in section 14-208.40B(a)-(b) detailing how an SBM hearing is initiated after the sentencing phase and by whom it is initiated, section 14-208.40B(c) instructs "[a]t the hearing, the court shall determine if the offender falls into one of the categories described in [section] 14-208.40(a). The court shall hold the hearing and make findings of fact pursuant to [section] 14-208.40A." N.C. Gen. Stat. § 14-208.40B(c) (2025). Moreover, in *Belfield*, this Court reviewed an SBM issue falling under section 14-208.40B but relied on our precedent in *Thomas*, which reviewed an SBM issue under section 14-208.40A, to support its holding where a high risk score is not present the State must present additional evidence and the trial court make additional findings of fact. *Belfield*, 297 N.C. App. at 822–23, 911 S.E.2d at 759; *Thomas*, 225 N.C. App. at 632, 741 S.E.2d at 385. Thus, the presentation of additional evidence by the State and findings of fact by the trial court are required under both sections 14-208.40A and 14-208.40B as currently codified. Further, this Court's decision in *Sprouse* was governed under a

previous version of section 14-208.40A, which required automatic lifetime SBM for a conviction of an aggravated offense.[1]

Second, this Court's decision to remand in *Mack* is inapplicable here. In *Mack*, "the trial court did not conduct a hearing on [SBM], pursuant to N.C. Gen. Stat. § 14-208.40A;" thus erring "by ordering [the d]efendant to enroll in [SBM] prior to holding the required hearing on the issue." 277 N.C. App. at 521, 860 S.E.2d at 281 (citation omitted). Here, there was a hearing on SBM occurring immediately after sentencing.[2] Therefore, as we did in *Leggett*, we must reverse without remand solely as to lifetime SBM.[3] *Barton*, 295 N.C. App. at 188, 905 S.E.2d at 235 ("A trial court's order requiring SBM must be reversed, without remand, if the defendant is low risk, and 'the State presented no evidence to support findings of a higher level of risk or to

---

[1] When the Court decided *Sprouse*, 217 N.C. App. at 239, 719 S.E.2d at 241, section 14-208.40A(c) said, "[i]f the court finds that the offender has been classified as a sexually violent predator, is a recidivist, has committed an aggravated offense, or was convicted of [section] 14-27.2A or [section] 14-27.4A, the court shall order the offender to enroll in a satellite-based monitoring program for life," N.C. Gen. Stat. § 14-208.40A(c) (2009). The automatic imposition of SBM on someone convicted of an aggravated offense was removed by the General Assembly in 2021 in Session Law 2021-138, § 18(d).

[2] Defendant argues "[section] 14-208A [sic] requires a separate hearing where the State *shall* present evidence" and "[t]he trial court may not base its findings and SBM order on evidence not presented at a separate SBM hearing," citing *Mack*. To be clear, nothing in section 14-208.40A indicates the hearing cannot follow the sentencing phase, only that the hearing must be regarding SBM and following the statutory strictures of section 14-208.40A. Thus, an SBM hearing can immediately follow sentencing. *See Mack*, 277 N.C. App. at 520, 860 S.E.2d at 281 (stating "the trial court acknowledged [SBM] required 'a separate hearing[,]' but "[t]he State elected to not proceed with that hearing during the sentencing phase"). Further, although "additional findings cannot be based solely on matters already addressed in a defendant's Static-99 risk assessment, the trial court may consider the context under which the crimes occurred, revealed in the factual basis for a defendant's guilty plea, when making additional findings as to the level of supervision required." *Belfield*, 297 N.C. App. at 823, 911 S.E.2d at 759 (citation modified).

[3] This opinion in no way disturbs the trial court's ordering Defendant to register as a sex offender.

support [SBM].'"); *Jones*, 234 N.C. App. at 243, 758 S.E.2d at 447–48 ("This Court has previously held that a DOC risk assessment of 'moderate,' *without more,* is insufficient to support the finding that a defendant requires the highest possible level of supervision and monitoring." (emphasis in original) (quoting *State v. Green,* 211 N.C. App. 599, 601, 710 S.E.2d 292, 294 (2011))).

## III.    Conclusion

For the foregoing reasons, we deny Defendant's PWC and we solely reverse the trial court's decision to place Defendant on lifetime SBM because the State did not produce additional evidence nor did the trial court find any additional facts to support findings of a higher level of risk or to support SBM.

DISMISSED IN PART; REVERSED IN PART.

Judge STADING concurs.

Judge ARROWOOD concurs in result only.

Report per Rule 30(e).